The judgment appealed from is therefore affirmed.

(75 South. 204)

No. 20991.

CAMDEN IRON WORKS v. SEWERAGE AND WATER BOARD OF NEW ORLEANS.

(April 16, 1917.)

*(Syllabus by Editorial Staff.)*

1. DAMAGES ☞85—LIQUIDATED DAMAGES—AMOUNT RECOVERABLE.

Where a number of contracts with a sewerage and water board to furnish iron piping were awarded to plaintiff and were all embodied in one written contract with a provision, however, that they should continue to be separate contracts, each calling for a penalty by way of liquidated damages for every day's default in delivery, the fact that the pipes under two contracts were ordered and delivered together, without designating which were for each contract, did not coalesce the two contracts into one so as to prevent recovery of more than one penalty.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 179–181, 183–187.]

2. DAMAGES ☞85—LIQUIDATED DAMAGES—AMOUNT RECOVERABLE.

Where plaintiff in making shipments did not apportion the shipment to the two contracts, the board was within its rights in apportioning them in proportion to the amounts called for by each contract, though this imposed on plaintiff as great a penalty for delay in delivery of a few pipes under one contract as for delay in delivery of a much larger quantity under the other contract; the failure to deliver a single pipe entailing the penalty under the contract.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 179–181, 183–187.]

3. DAMAGES ☞85 — LIQUIDATED DAMAGES — AMOUNT—EVIDENCE.

There was no merit in the claim that it was not possible to know on which contract the delays occurred, where there was positive and uncontradicted testimony of the board's engineer, based upon dates and figures in the record, that plaintiff was in default on both contracts for the number of days for which the penalty was claimed.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 179–181, 183–187.]

4. DAMAGES ☞85—LIQUIDATED DAMAGES—CONSTRUCTION BY PARTIES.

A contract with a sewerage and water board for the furnishing of piping fixed 1,300 tons as the quantity that might be ordered each month. Though the provision for uniform ordering and delivering of this quantity each month was disregarded and the board gave orders somewhat in excess of the monthly limit, the contractor never exceeded that limit, the board on one occasion protested against an announced excessive shipment, and continuously throughout the period during which deliveries were due complained of the contractor's delays in making delivery. *Held,* that the recovery of the stipulated penalty by way of liquidated damages could not be defeated on the theory that the parties by a long course of business had established a manner of executing the contract different from its strict letter.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 179–181, 183–187.]

5. CONTRACTS ☞10(4) — VALIDITY — MUTUALITY.

A provision in a contract to furnish iron piping to a sewerage and water board that the acceptance by the contractor of the last payment should be a release to the board from all claims and liability to the contractor except the claim for a retained percentage of the contract

price was not without mutuality, though, by a different provision, the board was not concluded in like manner by any estimates furnished or payments made, as the provision in question had for its consideration the obligation of the board to receive the pipes and pay for them.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 32, 37.]

Appeal from Civil District Court, Parish of Orleans; T. C. W. Ellis, Judge.

Action by the Camden Iron Works against the Sewerage and Water Board of New Orleans. Judgment for defendant, and plaintiff appeals. Affirmed.

Philip H. Mentz and A. W. Cooper, both of New Orleans, for appellant. Walter L. Gleason, of New Orleans, for appellee.

PROVOSTY, J. Plaintiff, a New Jersey corporation, entered into a contract with the defendant, the Sewerage and Water Board of the city of New Orleans, for furnishing iron piping; and this suit is for $32,600, a balance alleged to be due on the contract price. The record and the briefs are very voluminous, and the matter very intricate at first sight, embracing a world of figures, tables, maps, diagrams, a contract of 14 printed pages, a large number of letters full of dates, figures, etc.; but when one comes to understand it fully it becomes very simple.

The defendant board advertised for bids on six contracts designated as A, B, C, D, E, and F; and all were awarded to plaintiff. The $32,600 now sued for was retained by the defendant board as liquidated damages for delays in delivering the pipes under contracts A and B. The other contracts C, D, E, and F, were duly carried out, and are not at all involved in this suit. In reducing the contracts to writing, all were embodied in one document, but with the understanding, duly expressed in a special clause, that they should continue to be separate contracts, each calling for a penalty of $100 per day, by way of liquidated damages, for every day's default in delivery under it; that is

to say, as many of the contracts as were defaulted on, so many $100 per should be forfeited.

[1] Plaintiff does not contest this, but contends that, as an effect of the manner of executing contracts A and B, the two contracts coalesced into one; and that therefore the most that could possibly be retained by the defendant board would be one penalty for the two.

Plaintiff has reference here to the fact that the pipes for contracts A and B were ordered and delivered together; that is, without designation of which were for A and which for B.

But, obviously, this was a matter of mere bookkeeping. What difference could the manner of ordering and delivering make, so long as the quantity that could rightfully be ordered under each of the contracts was known. Plaintiff does not pretend that it was embarrassed in its deliveries, or in any other way prejudiced, by this manner of ordering.

[2] Another contention is that, while contract A called for pipes of 4, 6, 8, and 10 inches and for special castings in same quantities as contract B, it called for 3,585 tons of 12-inch pipes where contract B called for only 115 tons, and called for no pipes of 24, 36, 30, and 42 inches, whereas contract B called for these sizes as follows: 1,300 tons of 42-inch, 20 tons of 36-inch, 2,050 tons of 30-inch, and 680 tons of 24-inch. And that, inasmuch as the pipes were ordered and delivered for the two contracts together, it is not now possible to know on which one of the two the deliveries were tardy; and hence that the tardiness can be imputed only to the situation as a whole, and the penalty, as a consequence, be charged only as for one contract.

The answer to this argument is that all of the sizes not called for by contract A were attributed to contract B, and that the

sizes common to both were apportioned to them pro rata.

The correctness of this apportionment as made is not contested, but the right to make it is. And the reason assigned is that such an apportionment might lead to the absurd result that on an order, for instance, of 1,000 tons of 12-inch pipes, 970 tons would under this apportionment be apportioned to contract A, and only 30 to contract B (the proportion between the two contracts in the quantity of pipes of that dimension called for by each being as 97 to 3), and thus default in delivering the 30 tons would entail as great a penalty as default in delivering the 970 tons.

We can see nothing absurd in this situation. Failure to deliver one single pipe would entail the penalty as effectually as failure to deliver a thousand. Inability to have one needed pipe might cause as much embarrassment to the contractor laying the pipe lines as inability to get a thousand. And again, if, on receiving the order for the pipes, the plaintiff company had desired to apportion them in the shipment so as to avoid incurring the penalty under one of the contracts, the fact that the order had been given in globo for the two contracts would not have been an obstacle to its making such apportionment. Plaintiff, obliged by its contracts A and B to deliver 970 tons of 12-inch pipes for contract A and 30 tons of same dimension for contract B, and receiving an order for 1,000 tons of that dimension for the two contracts, might in making the shipment have specified that so many were for A and so many for B, if it could thereby have avoided the penalty for delay under one or the other of the contracts and had desired to do so. Plaintiff not having made the apportionment, we do not see why the board was not at liberty to apportion the shipment to the two contracts pro rata as has been done.

[3] Moreover, the argument is purely hypothetical, and cannot stand against the positive and uncontradicted testimony of defendant's engineer, based upon the dates and figures in the record, to the effect that plaintiff was in default on the two contracts for the number of days for which the penalty is claimed. And it is noteworthy that the supposed difficulty of apportionment existed only as to the 12-inch pipes; and that, for all that appears, plaintiff was in default for the number of days in question quoad the pipes of the other dimensions; and, as already stated, default in one of the dimensions was as effective as in all for incurring the said penalty.

[4] The pipes were not to be needed all at one time, nor could the shipments be made all at one time. Therefore what was to be the number of tons that might be ordered per month and required to be delivered was specified in the contract; and the number of days within which the deliveries would have to be made, under penalty, was also specified. The total for A and B was 1,300 tons, deliverable in 10 months, thus fixing at 1,300 tons the quantity that might be ordered each month. But instead of ordering uniformly at this rate each month, the defendant board ordered as follows: 4,873 tons on March 16th; 764, on May 17th; 1,646, on June 23d; 124, on July 24th; 3,252, on September 4th; 3,119, on October 19th. And the plaintiff company made deliveries as follows: 873 tons on April 30th; 861, on June 4th; 2,794, on July 17th; 169, on September 14th; 270, on September 26th; 727, on October 5th; 1,153, on October 19th; 391, on October 28th; 513, on November 4th and 9th; 130, on November 15th; and 963, on November 29th and December 6th. Whereby it is seen that the provision of the contract for uniform ordering and delivering of 1,300 tons per month was disregarded. Plaintiff contends that this disre-

gard of the time limit for ordering had the effect of doing away with the penalty clause of the contract, because this penalty clause was "dependent upon" the orders being uniform at the rate of 1,300 tons per month; and that this disregarding of the time limit by both parties had the effect of establishing a course of business between them which amended the contract as to time limits— this, on the principle that, where parties have by a long course of business established a certain manner of executing their contract different from the strict letter of the contract, one of them cannot equitably, without due warning to the other, hark back to the letter of the contract to the prejudice of the other.

We can discover in this case no room for the application of this principle. The object of this monthly limit of quantity was simply to protect the defendant board against being required to receive a larger quantity of piping than it could conveniently dispose of, and to protect the plaintiff against having to make larger deliveries than it could conveniently negotiate. And, as a matter of fact, the plaintiff never exceeded the 1,300 tons per month limit. On April 30th, when its first shipment was made, it was due approximately 1,950 tons, and the shipment was of 873. On June 4th, when its second shipment was made, it was due, say, 3,250, less the first shipment of 873, or 2,-377, and this second shipment was of 861; on July 17th, when its third shipment was made, it was due 5,200, less the two previous shipments of 1,734, or 3,666, and this third shipment was of 2,794; and so on to the end. True, the defendant board gave the orders somewhat in excess of the monthly quantity limit; but that it did not intend thereby to waive the benefit of this limit is shown by the fact that it promptly protested against an announced excessive shipment by plaintiff which might have caus-

ed congestion. (The shipments, it may be well to mention here, were not for contracts A and B alone, but also for contracts C, D, E, and F.) The sole effect of this ordering in advance was to afford the plaintiff more ample notice. Moreover, the correspondence of the parties shows that the defendant board began early to complain of plaintiff's delay in delivery, and continued to do so practically throughout the ten months during which deliveries were due.

Plaintiff's present contention, of the entire $32,600 having been improperly retained, would seem to have been an afterthought, originating with the new manager of its home office, after the former manager had recognized the propriety of the $100 penalty being assessed as to one contract.

Two estoppels are pleaded by the defendant board: One founded on the fact that the periodic estimates called for by the contract to be furnished by the defendant board to plaintiff, upon which payments were to be made, were duly furnished to plaintiff's local agent, and were accepted without protest although containing the deduction of this $100 demurrage penalty on both contracts; and the other founded on the fact that the plaintiff accepted the final payment without protest, and that by section 69 of the specifications of the contract it is provided, as follows:

"The acceptance by the contractor of the last payment shall operate as and shall be a release to the board from all claims and liability to the contractor for anything done or furnished for, or relating to the work, or any act or neglect of the sewerage and water board relating to or affecting the work, except the claim against the board for the remainder, if any there be, of the amount kept or retained as provided in paragraph 66."

The reference here is to the 10 per cent. on the contract price, and not to the $100 penalty involved in the present suit.

The case is with the defendant board without the aid of these estoppels; but we may add that we fail to see how the plaintiff

could escape from the second of these estoppels, founded as it is upon the express terms of the contract.

[5] This clause of the contract is said to be without mutuality because by preceding clauses the defendant board is expressly exempted from being concluded in like manner by any estimates that may have been furnished or payments made. But, evidently, this clause, like all the others operating against the plaintiff in the contract, had for its consideration the obligation of the defendant board to receive the pipes and pay for them.

Judgment affirmed.